Charlie Mae WATSON, Appellant,

v.

Stanley KOTLER, Appellee.

No. 5117.

District of Columbia Court of Appeals.

Argued March 10, 1970.

Decided April 13, 1970.

Dudley R. Williams, Washington, D. C., for appellant.

13. Id.

14. Nelson v. United States, 109 U.S.App. D.C. 392, 288 F.2d 376 (1961).

Herman Miller, Washington, D. C., submitted on the brief for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

KERN, Associate Judge:

On June 23, 1967, an inspector from the Housing Division of the Department of Licenses and Inspections discovered numerous Housing Code violations in an apartment building owned by appellee at 3223 Hiatt Place, N.W. Appellee was notified and given time in which to make repairs, as required by § 1301.4 of the Housing Regulations.[1] The housing inspector, on reinspection of the premises in September 1967, found that the violations had been abated. During the period between the two inspections, appellee had leased Apartment 2 in his building to appellant under a written lease, which waived appellee's obligation to give notice to quit.[2]

In June 1969 appellee brought action against appellant for recovery of possession of Apartment 2 because she was in arrears with her rent payments.[3] Appellant asserted the defense of invalidity of the lease because there had been Housing Code violations in her apartment at the time she executed the lease in 1967. See Brown v. Southall Realty Co., D.C.App., 237 A.2d 834 (1968). The trial court granted judgment in favor of appellee.

In Brown v. Southall, the landlord had made no attempt up until the time of trial to abate the violations existing on the premises he was renting. Further, it appeared that the landlord had violated the terms of his sworn statement to the Housing Division to the effect that he would *not* rent such premises until violations on them were corrected. We held (237 A.2d at 837) that "[t]o uphold the validity of this lease agreement, in light of the defects known to be existing on the leasehold prior to the agreement * * * would be to flout the evident purposes [of the Housing Code]."

The record shows in the instant case that appellee complied with the June 1967 order of the Housing Division to repair violations existing on his premises.[4] Appellant did not complain in July 1967, when she executed the lease, that appellee was delaying his repairs nor does she now assert that he acted unreasonably. The housing inspector in September 1967 found that appellee had made the repairs. Only after appellant had fallen behind in her rent payments did she contend that the lease she had been living under for two years was illegal and void.

Section 1301.4 of the Housing Regulations allows a landlord a reasonable time after he has received notification of Code violations on premises he leases to repair them in "a workmanlike manner." D.C. Housing Regulations § 2515. We must assume that the seriousness of the menace to the public which such violations pose and the time required for repair are considered by the representatives of the Housing Division before they grant a landlord "reasonable time" to make repairs.[5] For us to in-

---

1. Notice of a Housing Code violation shall "[a]llow a reasonable time for the performance of any act such notice requires. * * *"

2. See D.C.Code 1967, §§ 45–902, 908.

3. The parties stipulated that $115 rent was owed at the time appellee filed suit.

4. There was testimony that *new* housing violations were found on the premises after the execution of the lease but such violations do not result in voiding the lease. Saunders v. First Nat'l Realty Corp., D.C.App., 245 A.2d 836 (1968). There was further testimony that appellee's housing business license was renewed each year during the period in question by the Department of Licenses and Inspections. D.C.Code 1967, § 47–2328; Housing Regulations § 3102.1.

5. Appellant asserts in her brief that "the premises were vacant when the extension was granted." However, there is no basis in the record on appeal for this statement. We note that in Brown v. Southall, *supra*, the Housing Division took steps to assure

validate the lease between appellant and appellee under the circumstances of this case "would be to flout the evident purposes" of the Housing Code which was our primary consideration in declaring the lease void in Brown v. Southall. The purpose of the Housing Code is not solely to penalize landlords but to stimulate them into keeping their premises safe and habitable for tenants. To deprive the landlord of rental income from premises he seeks to maintain is certainly to discourage him from meeting the demand for decent, low-cost housing in the District of Columbia. *See* Edwards v. Habib, 130 U.S.App.D.C. 126, 140, 397 F.2d 687, 701 (1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed. 2d 560 (1969). We do not believe that the public interest is served by voiding a lease which a tenant enters into while the landlord is correcting deficiencies on the leased premises and under which she thereafter lives for two years.

Affirmed.

itself that the premises would remain vacant until repairs were accomplished; thus, we cannot assume that the Housing Division's action here of not banning the leasing of the premises was due to inadvertence, even if appellant's assertion was true.